COMMISSIONER OF INTERNAL REVENUE

v.

GAZETTE TEL. CO.

No. 4722.

United States Court of Appeals Tenth Circuit.

Jan. 30, 1954.

S. Dee Hanson, Sp. Asst. to Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and A. F. Prescott, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Dana Latham, Los Angeles, Cal. (John S. Welch and Latham & Watkins,

Los Angeles, Cal., on the brief), for respondent.

John L. J. Hart, Denver, Colo. (Stephen H. Hart, Claude M. Maer, Jr., and William P. Cantwell, Denver, Colo., on the brief), amici curiae.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

This petition to review a decision of the Tax Court presents the question whether Gazette Telegraph Company, hereinafter referred to as the taxpayer, is entitled to amortize and deduct pro rata for the taxable years in question the asserted cost of a covenant not to engage in the newspaper business in El Paso County, Colorado, in competition with the taxpayer as assignee of the contract containing such covenant.

The Tax Court found the facts, 19 T. C. 692; and as found by that court, these are the material facts. Gazette and Telegraph Company, hereinafter referred to as the old corporation, owned a plant and published a newspaper in Colorado Springs, Colorado. It had issued an outstanding 5,000 shares of capital stock, each of the par value of $100. Clarence Clark Hamlin Trust, El Pomar Investment Company, T. E. Nowels, Charles L. Tutt, John A. Carruthers, Richard W. Nowels, Frank R. Wadell, James R. Miller, Seddie G. Hamlin, and others were owners of stock. T. E. Nowels, president and general manager of the corporation, had wide experience as a newspaper publisher, and was well known in the community. He was in good health and had no intention of retiring. Richard W. Nowels, son of T. E. Nowels, was employed by the corporation, and he now publishes a newspaper in or near San Francisco, California. Frank R. Wadell, managing editor of the newspaper, was a capable man, and had wide experience in the newspaper business. James R. Miller was bookkeeper for the corporation. Some of the other stockholders were relatives of or otherwise closely connected with persons who were or had been associated with the company. R. C. Hoiles, a resident of California, was a man of wide experience in the newspaper business. Correspondence passed between Hoiles and Nowels with respect to the former and his associates acquiring the newspaper properties. In the course of the correspondence, Hoiles made it clear that the buyers would insist upon a covenant on the part of the sellers not to compete with the buyers in the newspaper business. And in one letter, Hoiles referred to an intent or purpose to set up on the books of a new corporation the amount of the covenant, amortize it, and thus reduce the taxes of himself and those associated with him. Hoiles and his two sons went to Colorado Springs for the purpose of conducting final negotiations for the purchase of the properties. Hoiles and his sons, as parties of the first part, and Nowels and other owners of stock as parties of the second part, entered into a written contract which provided among other things that the parties of the first part should pay to each of the thereto signing parties of the second part $200 for each share of stock set opposite their names, respectively; that the parties of the second part would not engage in the newspaper business in competition with the parties of the first part, their successors and assigns, in the county in which Colorado Springs was situated for a period of ten years from and after the date of the contract; and that the two items of sale were evaluated, (a) the stock at $150 per share, and (b) the prohibition and refraining from carrying on business as set forth therein at $50 per share of the stock. The negotiations for the purchase of the stock and the covenant not to compete were conducted at arm's length by strangers in interest; and negotiating in that manner, the parties fixed the price of the stock at $750,000 and the price of the covenant at $250,000. All of the stock issued by the

old company was transferred to Hoiles and his associates, the $1,000,000 was paid, and the transaction was consummated. The taxpayer was organized shortly after consummation of such transaction, and one of the assets transferred to it was the covenant not to compete. Based upon the facts thus found, the Tax Court held that the taxpayer was entitled to amortize the asserted cost of the covenant and claim annual deductions pro rata during the life of the covenant. The Commissioner sought review.

The Commissioner does not challenge the findings of fact made by the Tax Court on the ground that they are not supported by substantial evidence or that they are clearly erroneous. Without challenging the findings, the Commissioner advances three points. One is that the Tax Court erred in holding that the taxpayer, as assignee of the contract, was entitled to amortize the asserted cost of the covenant of the selling stockholders not to engage in the newspaper business in competition with the taxpayer. Another is that the court erred in failing to find that the taxpayer was not entitled to amortize the asserted cost of the covenant. And the third is that the court erred in entering its decision for the taxpayer. It is manifest that the three points are intended to present in different language a single contention and therefore they may be considered together. Section 23(l) of the Internal Revenue Code, 26 U.S.C. § 23(l), provides in substance that in computing net income there shall be allowed as a deduction a reasonable amount for the exhaustion, wear, and tear of property used in trade or business. Section 29.23(1) 1-3 of Treasury Regulation 111 was promulgated under the statute and is in harmony with it. Where a lump sum is paid for the properties of a going business together with intangibles and a covenant on the part of the seller not to compete with the purchaser or his assignee for a specified period of time, and the covenant against competition is not treated separately in respect to cost and value but is nonseverable, the purchaser has no warrant in the statute or the regulation to treat any part of the price paid as the cost of the covenant subject to depreciation. Toledo Blade Co. v. C. I. R., 11 T.C. 1079, affirmed, 6 Cir., 180 F.2d 357, certiorari denied, 340 U.S. 811, 71 S.Ct. 38, 95 L.Ed. 596; Burke, 18 T.C. 77. On the other hand, in a transaction in which property is sold and the seller covenants not to engage in business in competition with the purchaser for a specified period of time, if the parties in good faith and realistically treat the covenant in a separate and severable manner in respect to value and cost the purchaser may amortize the price paid for the covenant and claim annual deductions pro rata during the life of the covenant. Farmers Feed Company of New York, 17 B.T.A. 507; Christensen Machine Co., 18 B.T.A. 256; Eitingon-Schild Company and Subsidiaries, 21 B.T.A. 1163; B. T. Babbitt, Inc., 32 B.T.A. 693; Christensen Machine Co. v. United States, Ct.Cl., 50 F. 2d 282.

In the transaction under consideration, the assignors of the taxpayer acquired capital stock in the old corporation and a covenant not to compete. By the contract, the two were treated in a separate and severable manner in respect to value. A specified value was placed upon the stock, a fixed value was placed upon the covenant, and the assignors of the taxpayer paid the aggregate of the two. Under the facts found by the Tax Court, the covenant created a new and valuable right in the hands of the purchasers for which they paid a separate consideration. The covenant had a life of ten years. Upon the expiration of that period its value will be exhausted. Its value has been and is being exhausted ratably by the passage of time. And in such circumstances, the taxpayer as assignee of the contract is authorized to claim deductions pro rata during the life of the covenant. Farmers Feed Company of New York, supra;

Christensen Machine Co., supra; Eitingon-Schild Company and Subsidiaries, supra; B. T. Babbitt, Inc., supra; Christensen Machine Co. v. United States, supra.

The decision of the Tax Court is affirmed.